647 F.2d 402
 BETZ LABORATORIES, INC., Appellant,
v.
John M. HINES, Gerald W. Blakeley, Jr., and Ferdinand
Colloredo-Mansfeld, Trustees of the Cabot 95 Trust
and Cabot, Cabot & Forbes Co.
 No. 80-2227.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 15, 1981.
Decided May 5, 1981.
 
 Edward M. Posner (argued), Susan C. Waltman, Drinker, Biddle & Reath, Philadelphia, Pa., for appellant.
 Eleanor N. Ewing (argued), Kenneth M. Cushman, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellees.
 Before WEIS and HIGGINBOTHAM, Circuit Judges, and McCUNE,* District Judge.OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 The fraud exception to the parol evidence rule is the matter at issue in this appeal. In isolated instances, the Pennsylvania courts have held that with the presence of appropriate language in the writing, only evidence of fraud in omitting or adding certain provisions will qualify as an "exception" to the rule. More frequent, however, are decisions allowing evidence to show fraud induced a party to enter into what is on its face a comprehensive, written agreement. After reviewing the contentions of the parties, we conclude that the latter line of cases governs and, accordingly, vacate a judgment for the defendant resting on the more restrictive reading of the fraud exception.
 
 I.
 
 2
 The plaintiff, Betz Laboratories, Inc., purchased a building and subsequently brought suit against the seller to recover some $80,000 spent repairing the floor. The case was originally filed in the Court of Common Pleas of Bucks County, Pennsylvania, but was removed to the United States District Court for the Eastern District of Pennsylvania on the basis of diversity jurisdiction. After argument, the district court entered summary judgment for the defendants.
 
 
 3
 In late 1977, Betz approached the defendants (collectively referred to as "Cabot") about purchasing building 4A in the Bucks County Business Park. Betz made clear its need for a floor with a loading capacity of at least 750 pounds per square foot. In response, Cabot provided Betz with plans and specifications it had given to the builder, Aberthaw Construction Company, a subsidiary of Cabot. These specifications called for a five inch concrete slab on grade floor reinforced with wire mesh and, in addition, described the required soil compaction.
 
 
 4
 To satisfy Betz's inquiries, Cabot also hired a consulting engineer, Dr. A. A. Fungaroli, to determine the floor's loading capacity. His findings, based upon two test borings at extreme ends of the four acre floor, were sent to Betz. Fungaroli reported that the floor was "four (4) inches thick and reinforced with wire mesh," and concluded that it could support 1,000 pounds per square foot. He cautioned that the borings might not be fully representative of the "as built conditions," and included a comment that in time there might be cracking from support soil "adjustments and not subsurface soil support problems." One of Cabot's representatives stated that he was certain the floor would meet Betz's requirements because the soil was well compacted and the floor's average depth was at least five inches.
 
 
 5
 After purchasing the building, Betz discovered several problems with the floor: some portions of the concrete were only two and one-half inches thick; in places the reinforcing mesh was underneath instead of embedded in the concrete; and voids between the floor and the soil beneath ranged from 3/4 of an inch to over three feet. To strengthen the floor sufficiently to meet its needs, Betz incurred expenses of $82,100 pumping grouting underneath the concrete slab.
 
 
 6
 When the parties agreed to the sale of the property, a written contract was prepared by Betz's attorneys. The document made no reference to the existing condition of the floor or to Betz's specific floor strength requirements. Among the provisions was the following standardized clause: "This agreement contains the whole agreement between the Seller and Buyer and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever."
 
 
 7
 The plaintiff's complaint contains two counts the first asserts breach of contract, and the second alleges fraud in the inducement. In a bench opinion, the district court concluded that the representations as to floor strength were not collateral to the sale agreement and, therefore, came within the scope of the parol evidence rule. Count I was dismissed on that basis, and the plaintiff has not appealed from that order.
 
 
 8
 As to Count II, the court noted "confusion or doubt" in Pennsylvania law as to whether a party asserting an exception to the parol evidence rule must plead and establish fraud in the inducement or fraud in the execution.[1] Finding it unnecessary "to reconcile these two different, somewhat divergent, doctrines," the court entered judgment for the defendants "because the plaintiff failed to state a claim under either possible theory."
 
 
 9
 The district judge observed that both theories of fraud would require the plaintiff to establish (1) that the defendants misrepresented a material fact, and (2) that the plaintiff justifiably relied on the misrepresentation in entering into the contract. Ruling in the alternative, the court held that the plaintiff's claim was deficient in both respects. First, the Fungaroli report, and the defendants' interpretations of it, were said to be nonactionable statements of opinion, not assertions of fact or guarantees of the condition of the floor. Second, even if the defendants' statements could be characterized as misrepresentations of fact, the "plaintiff's fraud claim would still be deficient for failure to adequately establish justifiable reliance."
 
 
 10
 In arriving at this latter ruling, the judge reasoned that the "integration clause" effectively disclaimed the alleged misrepresentations, and the lack of any reference to the floor's load bearing capacity in the writing constituted a waiver of plaintiff's right to rely on an exception to the parol evidence rule. The court said "that if the parol evidence rule precludes an action for breach of contract, it equally protects against an action for fraud, or fraudulent misrepresentation."
 
 II.
 
 11
 The plaintiff contends that the defendants made specific fraudulent representations. It therefore challenges, as not adequately meeting the issues, the district court's conclusion that only differing interpretations of the Fungaroli report were asserted. The plaintiff also argues that the parol evidence rule does not apply to fraudulent representations, and consequently, a genuine issue of material fact has been advanced that makes summary judgment inappropriate. The defendants' position is that when a party has notice of a defective condition and an integrated written agreement disclaims the existence of extraneous representations, the parol evidence rule bars evidence of fraudulent representations about that condition. The defendant concedes, however, that where the writing is silent as to the existence of extraneous representations, the rule would not bar evidence of fraud in the inducement.
 
 III.
 
 12
 The record demonstrates that the plaintiff is relying on allegations of specific misrepresentations made by the defendants in addition to perhaps differing interpretations of the Fungaroli report. In answers to interrogatories, the plaintiff asserted that after the sale it learned that prior tenants experienced rocking of the floor when heavy equipment traveled over it. In addition, the occupant of an adjacent building, also constructed by the defendants, had complained of floor defects similar to those found in the Betz building. Plaintiff insisted the defendants fraudulently concealed knowledge of the defective construction, and it sought further discovery to demonstrate that they knew the floor did not meet the plaintiff's requirements at the time they represented the contrary.
 
 
 13
 In the context of summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion. When the plaintiff's allegations are appraised in this fashion, the statements concededly made by the defendants are factual, not merely opinion. Highmont Music Corp. v. J. M. Hoffmann Co., 397 Pa. 345, 351, 155 A.2d 363, 366 (1959) (representations that floors were "very, very strong" and could "support any weight" were factual). The defendants, therefore, cannot prevail at this point on the theory that they are not liable for what was only an expression of opinion. We turn, then, to a consideration of the parol evidence rule.
 
 IV.
 A.
 
 14
 It is now generally accepted that the parol evidence rule is substantive rather than evidentiary, so we apply state law rather than the federal rules of evidence. The parties concede that Pennsylvania law applies, but disagree as to its interpretation and effect on the factual situation here.
 
 
 15
 Pennsylvania decisions on the parol evidence rule are neither clear nor consistent, and it would serve no useful purpose to explore the cases before 1931. In that year, the Pennsylvania Supreme Court decided Feuerstein v. New Century Realty Co., 304 Pa. 271, 156 A. 110 (1931). Acknowledging that the leading case of Gianni v. R. Russell & Co., 281 Pa. 320, 126 A. 791 (1924), recognized that contracts obtained through fraud could be attacked, the court said:
 
 
 16
 "It is always competent to aver and prove that an engagement in writing was induced by fraudulent oral representations of material facts that affect the consideration. The purpose in such case is not to alter or vary the terms of the writing by parol evidence but to strike the writing down, just as though it had never been in existence, or to strike down such part of it as is dependent on the fraud, if the balance of the contract can be sustained as enforceable."
 
 
 17
 Id. at 275-76, 156 A.2d at 111.
 
 
 18
 Twenty years later, the court referred to that language approvingly and said "the matter was definitely settled." LaCourse v. Kiesel, 366 Pa. 385, 77 A.2d 877 (1951). In that case, the court held that misrepresentations relied on by a party are fraudulent when made by those who had the "means of knowledge from which they were bound to ascertain the truth." Id. at 390, 77 A.2d at 880. Moreover, the court ruled that "(t)he so-called 'integration clause' does not by its terms preclude proof of the misrepresentation because such representation does not 'contradict, vary or add to the terms of the agreement.' " Id. at 391, 77 A.2d at 881.
 
 
 19
 Despite the fact that the law was considered "settled" just two years before, the court in Bardwell v. Willis Co., 375 Pa. 503, 100 A.2d 102 (1953), proceeded to undo the certainty and reintroduce confusion that has persisted. In that case, a tenant alleged that the building owner fraudulently represented that the premises would be suitable for plaintiff's purposes. The lease contained a recital that plaintiff had examined the premises and received them without warranty. In addition, there was a clause stating that the lease contained ' "the entire contract and agreement between the parties.' " Id. at 506, 100 A.2d at 104 (emphasis the court's). The court held that it was not enough to aver that oral representations were fraudulently made it was necessary to show the representations were fraudulently or mistakenly "omitted from the subsequent (complete) written contract." Id. at 507, 100 A.2d at 104 (emphasis the court's). As the court saw it, "otherwise the parol evidence rule would become a mockery, because all a party to the written contract would have to do to avoid, modify or nullify it would be to aver (and prove) that the false representations were fraudulently made." Id. (emphasis the court's).
 
 
 20
 Retreat from Bardwell was not long in coming. In Berger v. Pittsburgh Auto Equipment Co., 387 Pa. 61, 127 A.2d 334 (1956), the court allowed a tenant to rescind a lease based on the owner's misrepresentations about floor strength. The court observed that the purpose of the evidence was not to vary the terms of the writing, but to rescind it in its entirety. Possibly in an effort to ease the transition from Bardwell, the court commented that a disclaimer in a collateral writing did not apply to conditions on the premises that were not reasonably ascertainable. The writing stated that the tenants had inspected the property and accepted it "in its present condition." The court was at some pains to explain why the tenant could not have observed the inadequacy of the floor support before taking possession. The dissent complained, with some basis, that the majority's holding was at odds with Bardwell.
 
 
 21
 Consistent with Berger is Highmont Music Corp. v. J. M. Hoffmann Co., supra, where the court permitted evidence of misrepresentation again about the strength of a floor in circumstances almost identical with those in Berger. The Highmont court pointed out that the tenant had the option to rescind the contract or seek damages for fraud as does the plaintiff in the case sub judice.
 
 
 22
 In Nadolny v. Scoratow, 412 Pa. 488, 195 A.2d 87 (1963), the court followed Highmont. At this point, it appeared that Bardwell was an aberration and that the Berger-Highmont line of cases was the mainstream. But a few years later, the court returned to Bardwell's restrictive holding and quoted at length its theory that the fraud exception applies only to omissions from the writing. See Nicolella v. Palmer, 432 Pa. 502, 248 A.2d 20 (1968).
 
 
 23
 The Pennsylvania Superior Court was understandably perplexed about which line of cases to follow. In National Building Leasing, Inc. v. Byler, 252 Pa.Super. 370, 381 A.2d 963 (1977), Judge Price, writing for the court, conceded that Bardwell was troublesome, but rejected the proposition that evidence of fraudulent inducement to contract cannot be admitted.[2] Another member of the Superior Court in LeDonne v. Kessler, 256 Pa.Super. 280, 389 A.2d 1123 (1978), tried with questionable success, to harmonize Bardwell, Berger, and Byler by looking to the subject of the misrepresentation and the text of the integration clause. See 256 Pa.Super. at 287-97, 389 A.2d at 1127-32.
 
 B.
 
 24
 The recital of the meanderings of Pennsylvania law, while regrettably lengthy, nevertheless demonstrates why the district judge here found the parol evidence rule in Pennsylvania to be in an uncertain state. Mindful that our role is only to predict what the Supreme Court of Pennsylvania would do if presented with the issue, and not to formulate the law, we approach our task with appropriate deference to the state court holdings. See Keystone Aeronautics Corp. v. R. J. Enstrome Corp., 499 F.2d 146, 147 (3d Cir. 1974). However, we conclude that attempting to reconcile Bardwell and Berger is not sound, because their rationales are fundamentally inconsistent.
 
 
 25
 Feuerstein v. New Century Realty Co., supra, held that when fraud in the inducement is alleged, parol evidence is not introduced to alter the terms of the contract, but is proffered to strike down the writing. Thus, the evidence does not rewrite a contract it demonstrates that there was no agreement. It follows that if fraud so taints the relationship between the parties that no contract is formed, or the agreement is made voidable, the same rationale should apply to the "integration clause." As part of the contract, it, too, is struck down.[3]
 
 
 26
 It is arguably incorrect to say that fraud is an exception to the parol evidence rule. Rather, the rule does not apply because the fraud establishes that there is no contract no contract, no parol evidence rule. Thus, the necessity for establishing a relationship between the wording of the integration clause and the evidence showing fraud in the inducement is not apparent. The situation is different, of course, where inaccurate representations not amounting to fraud are sought to be introduced in an action for breach of contract. In that setting, the language of the "integration clause" would be an aid in determining whether all facets of the transaction have been incorporated in the writing. If not, then the parol evidence rule would not apply to the excluded matters.
 
 
 27
 It may be that some of the uncertainty in Pennsylvania cases has been caused by a failure to distinguish two different situations the first, where fraud is not alleged and evidence of collateral understandings is permitted because the agreement is not integrated; the second, where fraud in the inducement is asserted. In the first example the scope of the integration clause is relevant, but in the second it is not. It is important not to lose sight of the fact that in the parol evidence context claims for breach of contract call for treatment different from that for rescission or damages based on fraud.
 
 
 28
 Bardwell's premise that evidence of fraud should be limited to the issue of execution of the agreement is not a sound one today.[4] One of the cases Bardwell relied on was T. W. Phillips Gas & Oil Co. v. Kline, 368 Pa. 516, 84 A.2d 301 (1951), where the parol evidence rule was held to bar statements of an agent. Even though it was alleged that the statements were fraudulent, the court said, under the circumstances, the representations "could not amount to fraud." Id. at 519, 84 A.2d at 302. Thus, the Phillips case did not exclude evidence of fraud, but simply held that there was none.
 
 
 29
 Bardwell's quotation from Phillips is an indication that there was not a full appreciation of the distinction between cases where a misstatement not amounting to fraud was properly excluded in an action for breach of contract and those instances where the representations were fraudulent, and the suit was for rescission. Thus, near the end of the Bardwell opinion we read, "(m)erely bringing an action in trespass for deceit instead of in assumpsit for breach of contract will not suffice to circumvent the parol evidence rule." Id. at 508, 100 A.2d at 105. It might be said, rhetorically, that it surely would not be desirable to allow a wrongdoer to evade responsibility by incorporating in a writing a boiler plate integration clause disclaiming his fraudulent representations.[5]
 
 
 30
 The Pennsylvania cases discussing the parol evidence rule must be read closely. In some instances the critical issue is whether, under state fact pleading requirements, the complaint averments amount to fraud. In other cases, the issue is whether in a breach of contract suit where fraud is not proved, the integration clause extends to the challenged evidence.
 
 
 31
 Our search for the applicable case law has not provided a conclusive answer to the question presented here. When the case law does not cover a point, we have often resorted to the Restatements because of the Pennsylvania state courts' frequent reliance on them. We think it helpful in this instance to consult the Restatement (Second) of Contracts as an aid in resolving the inconsistencies we have found. Section 240 provides: "Agreements and negotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish (d) illegality, fraud, duress, mistake, lack of consideration or other invalidating cause." Comment c to that section states:
 
 
 32
 "Invalidating cause. What appears to be a complete and binding integrated agreement may be a forgery, a joke, a sham, or an agreement without consideration, or it may be voidable for fraud, duress, mistake, or the like, or it may be illegal. Such invalidating clauses need not and commonly do not appear on the face of the writing. They are not affected even by a 'merger' clause."
 
 
 33
 Restatement (Second) of Contracts, Tent. Drafts Nos. 1-7, at 551 (1973).[6]
 
 
 34
 This tentative draft of the Restatement is more consistent with the Berger line of cases than Bardwell. In addition, scholarly commentary supports the principle that evidence of fraud in the inducement may be shown to avoid an alleged contract.[7] We see no need to explore these authorities in depth. In support of the restrictive Bardwell approach it may be argued that an integration clause is an expression by the parties of an intent to have their contractual rights considered as if what is written were indeed the case. Recognizing the agreement, to the extent fraud in the execution is not involved, will permit transactions to be more secure, reduce litigation, and remove the temptation to perjury.
 
 
 35
 Against this position, it is said that fraud vitiates every agreement that it touches. To give effect to an integration clause permits language to shield a party from the consequences of his fraud, contrary to public policy. Furthermore, the distinction between fraud in the execution and fraud in the inducement is rationally unjustified. As we have pointed out, the parol evidence rule presupposes a contract binding on the party offering extrinsic evidence, and a contract tainted by fraud is void or voidable at the option of the injured party. Moreover, the possibility of perjury is insufficient to justify a restrictive approach when there exists the additional requirement that fraud be proved by clear and convincing evidence. Thus, there is a counterbalance to any uncertainty caused by the absence of a writing.
 
 
 36
 We find these latter arguments far more persuasive and conclude that if this case were presented to the Pennsylvania Supreme Court, it would hold that evidence of fraud in the inducement is outside the parol evidence rule and, consequently, admissible. It follows, therefore, that the district judge erred in granting summary judgment on the premise that the plaintiff would be barred from presenting evidence of fraud. Consequently, the judgment of the district court will be vacated, and the case remanded for further proceedings. Costs to abide the event.
 
 
 
 *
 The Honorable Barron P. McCune, United States District Court for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 The court defined "fraud in the inducement" as the situation where a "party was enticed into the contract by some misrepresentation made by the opposing party," and "fraud in the execution" as where "a misrepresentation was not only made, but was omitted from the final written agreement through fraud."
 
 
 [2]
 It is interesting that the integration clause in Byler is precisely the same as the one in the case at bar. See 252 Pa.Super. at 373, 381 A.2d at 965
 
 
 [3]
 See J. Murray, Murray on Contracts § 106, at 230 (2d rev. ed. 1974)
 
 
 [4]
 Fraud in the execution was a permissible defense at common law from an early period under a plea of non est factum. Fraud in the inducement, however, could be attacked only in courts of equity. This difference survived into modern times until the distinction between law and equity became less important. See Ames, Specialty Contracts and Equitable Defenses, 9 Harv.L.Rev. 49 (1895)
 
 
 [5]
 In Danann Realty Corp. v. Harris, 5 N.Y.2d 317, 184 N.Y.S.2d 599, 157 N.E.2d 597 (1959), the New York Court of Appeals held that a specific disclaimer barred evidence of reliance upon fraudulent representations. The decision was uniformly criticized as permitting a party to immunize himself from responsibility for fraud, contrary to public policy. See, e. g., Note, Disclaimer of Liability for Fraud in Written Agreements, 24 Alb.L.Rev. 148 (1960); 59 Colum.L.Rev. 525 (1959), 45 Cornell L.Q. 360 (1960)
 
 
 [6]
 Restatement (Second) of Contracts "(t)entative drafts 1 through 7 are now hardbound and admit only theoretically of any possible change." J. Murray, Murray On Contracts, Preface To The Second Revised Edition at iii (2d rev. ed. 1974). The same result would be reached under the first Restatement. See Restatement of Contracts § 238 (1932)
 
 
 [7]
 See, e. g., A. Corbin, Corbin On Contracts § 580, at 435 (1960), in which Berger is specifically supported, § 573, at 358 (Kaufmann 1980 Supp.); S. Williston, Williston On Contracts §§ 631, at 950, 634, at 1017 (3d ed. 1961); J. Murray, Murray On Contracts § 108, at 237 (2d rev. ed. 1974); Sweet, Promissory Fraud and the Parol Evidence Rule, 49 Cal.L.Rev. 877, 887 (1961); Murray, The Parol Evidence Rule: A Clarification, 4 Duq.L.Rev. 337 (1966); and the sources cited supra at note 5