RICHARD J. SILES *vs.* TRAVENOL LABORATORIES, INC.

Essex. November 9, 1981. — March 30, 1982.

Present: GREANEY, ROSE, & PERRETTA, JJ.

*Contract,* Employment.

At the trial of an action for wrongful termination of employment, the evidence was insufficient to warrant a finding that the employer acted in bad faith in terminating a salesman's at-will employment following an incident which resulted in complaints from a customer concerning the conduct of the salesman and his supervisor. [357-359]

CIVIL ACTION commenced in the Superior Court on May 9, 1978.

The case was tried before *Mullaney,* J., a District Court judge sitting under statutory authority.

*Frederick T. Golder* for the plaintiff.

*Jerome M. Leonard (Elizabeth Paine* with him) for the defendant.

ROSE, J. The plaintiff, Richard J. Siles, brought suit against his former employer, the defendant Travenol Laboratories, Inc., for wrongful termination of employment.[1] Following a jury verdict for the plaintiff which awarded Siles $250,000 in damages, the Superior Court judge allowed the defendant's motion for judgment notwithstanding the verdict. We hold that the judge was correct in concluding

---

[1] The plaintiff also brought suit for libel against Howard Small, his former supervisor at Travenol Laboratories, Inc. Small's motion to dismiss for lack of personal jurisdiction was allowed by the trial court. This order was not listed by the plaintiff-appellant as an issue on the notice of appeal. Accordingly, the validity of that ruling is not properly before this court and will not be considered on appeal. See Mass.R.A.P. 3(c), as amended, 378 Mass. 927 (1979) ("The notice of appeal shall . . . designate the judgment, order or part thereof appealed from"); *Ramos* v. *Storlazzi,* 10 Mass. App. Ct. 876, 878 (1980); *Elfman Motors, Inc.* v. *Chrysler Corp.,* 567 F.2d 1252, 1254 (3d Cir. 1977).

that the evidence was insufficient to support a finding that the defendant's termination of the plaintiff's at-will employment was the result of "bad faith," see *Fortune* v. *National Cash Register Co.*, 373 Mass. 96 (1977); *Gram* v. *Liberty Mut. Ins. Co.*, 384 Mass. 659 (1981); *Cort* v. *Bristol-Myers Co.*, 385 Mass. 300 (1982), and affirm the judgment.

We review the evidence in the light most favorable to the plaintiff, and resolve in his favor all reasonable inferences that could be drawn from that evidence. See *H.P. Hood & Sons* v. *Ford Motor Co.*, 370 Mass. 69, 71 (1976); *Alholm* v. *Wareham*, 371 Mass. 621, 627 (1976); *O'Shaughnessy* v. *Besse*, 7 Mass. App. Ct. 727, 728-729 (1979). In October, 1977, Siles was hired to work for Travenol as a respiratory therapy specialist at a starting salary of $14,500 per year plus commissions and other employment benefits. The employment agreement was terminable at will by either party. Siles participated in a two-week training program and was assigned to sell various items to hospitals in the southern region of New England.

Siles's immediate supervisor was Howard Small, the person who hired him. Once or twice a month for about two or three days at a time Small would work with Siles, making calls with him to customers and evaluating Siles's performance. Approximately five months after beginning employment, Siles, accompanied by Small, went to the Miriam Hospital on a routine sales call. At the hospital, a verbal confrontation occurred between Siles, Small and the hospital delivery receiver, Stephen Tremblay, apparently concerning delivery truck problems. Tremblay reported the incident to his superiors.[2] Both the assistant purchasing agent and the director of purchasing for the hospital spoke with Siles and Small. After the incident, Small orally rebuked Siles for his conduct.

---

[2] At trial, Tremblay testified that Siles had used abusive language towards him and that Small did not participate in the argument. Siles testified that he did not use abusive language towards Tremblay, that Small participated in the discussion, and that the entire conversation didn't last more than two minutes.

The director of purchasing at the hospital, Robert Hoag, subsequently wrote to Travenol to complain about the conduct of Siles and Small. He demanded an apology and excluded Siles and Small from conducting business activities at the hospital for a one-year period. The letter also indicated that the hospital was reviewing all existing purchase agreements with Travenol in order to determine the feasibility of obtaining an alternative supplier. Small called Siles at his home and asked him to write an apology to Hoag and to Tremblay. Small also informed Siles that he would be coming to Boston one week later to give Siles his six-month review.

Siles met Small at the airport the following week. At that meeting, Small informed Siles that he was unhappy with Siles's sales performance and that Siles should consider himself fired. Siles had not been advised prior to that meeting that Travenol was considering the termination of his employment. At the time of his discharge, Siles had earned about $17,000 for the six-month period of employment with Travenol.

Vito Manon, the national sales representative of the respiratory division of Travenol, testified that he had conducted an investigation of the Miriam Hospital incident. Small had recommended that Siles be put on probation; however, Manon decided to fire Siles in order to preserve customer good will. According to Manon, factors such as the lack of new business development and complaints concerning Siles's attitude contributed to his decision.[3] Manon also testified that Travenol pays commissions to the salesmen assigned to particular territories on goods sold by them, regardless of who first brought in the account. Thus, Siles

---

[3] Siles testified that he made substantial contributions to Travenol's business development and that he had one of the better sales records among the seven respiratory sales specialists who worked under the direct supervision of Small. In addition, he claims to have opened a new market for Travenol in the sale of home care products, a field in which he had several years of experience. Siles also asserts that he had never been informed of any attitude problems.

was entitled to commissions from the first day he was assigned to a sales territory, even though those commissions were the result of customer contacts made by previous salesmen in that territory. Similarly, any subsequent commissions resulting from accounts originated by Siles would, after the termination of Siles's employment, be paid to Siles's successor.

After his termination, Siles was unable to find new employment in the medical sales field, and eventually obtained employment as an electronic parts salesman, earning approximately $400 per week. Siles's wife testified, over the objection of Travenol, that she has been forced to return to full-time work for financial reasons, even though such employment was against her doctor's orders.

Based upon the evidence put forth, Siles alleged that Travenol had wrongfully terminated his employment. In particular, Siles claimed that Small had deceived or misled representatives of Travenol concerning the Miriam Hospital incident so as to protect his own self-interest at the expense of Siles's job. Furthermore, Siles alleged that, by refusing to allow Siles to resign, and by refusing to give Siles any references,[4] Travenol prevented Siles from getting another job in the health care field.

After trial, the jury returned a verdict in favor of Siles and assessed damages against the defendant Travenol in the amount of $250,000. The trial judge subsequently allowed the defendant's motion for judgment notwithstanding the verdict, ruling that "the evidence taken in a light most favorable to the plaintiff was insufficient as a matter of law to warrant a finding that the defendant's termination of the plaintiff's employment was the result of bad faith." The judge reserved a final ruling on the defendant's motion for a new trial, noting in his "Conclusion and Order" that "[s]hould an appeal result in a decision that the evidence warranted a finding for the plaintiff, I would then order a

---

[4] There was conflicting evidence as to whether Travenol refused to give Siles references.

remittitur or order a new trial on the issue of damages only." Siles appeals from the judgment. We hold that the judge correctly allowed the defendant's motion for judgment notwithstanding the verdict on the plaintiff's claim that Travenol terminated his employment in bad faith.

Massachusetts now recognizes that an employer may not in every instance terminate without liability an employment contract which is terminable at will. *Fortune* v. *National Cash Register Co.*, 373 Mass. 96 (1977). Compare, e.g., *Fenton* v. *Federal St. Bldg. Trust*, 310 Mass. 609, 612 (1942). As was stated in the *Fortune* case, an employment at will contract, in the circumstances described there, "contains an implied covenant of good faith and fair dealing, and a termination not made in good faith constitutes a breach of the contract." *Fortune*, at 101. However, the mere absence of good cause to discharge an employee, while tending to negate the existence of good faith, does not by itself give rise to an enforceable claim for breach of a condition of good faith and fair dealing. *Gram* v. *Liberty Mut. Ins. Co.*, 384 Mass. at 668, 671-672. See *Richey* v. *American Auto. Assn.*, 380 Mass. 835, 839 (1980). Rather, our cases indicate that a plaintiff generally does not have an enforceable claim for a "bad faith" termination of an at-will employment contract unless he can show that: (1) the discharge involved an intent of the defendant to benefit financially at the plaintiff's expense, such as for the purpose of retaining for itself sales commissions or pension benefits which would otherwise be due to the plaintiff, see *RLM Associates* v. *Carter Mfg. Corp.*, 356 Mass. 718 (1969); *Fortune* v. *National Cash Register Co.*, 373 Mass. at 104-105; *Maddaloni* v. *Western Mass. Bus Lines, Inc.*, 12 Mass. App. Ct. 236, 243 (1981), or (2) that the employer's reason for the discharge was contrary to public policy, see *Gram* v. *Liberty Mut. Ins. Co.*, 384 Mass. at 668 n.6; *Cort* v. *Bristol Myers Co.*, 385 Mass. at 303, 306, 310.

There is no evidence in this case to suggest that Travenol discharged Siles so that it could retain certain sales commis-

sions for itself, or otherwise benefit financially at Siles's expense. Indeed, the evidence made clear that Travenol would not keep for itself the commissions which would become due on sales accounts originated by Siles, but instead would pay those commissions to Siles's successor. Contrast *Fortune* v. *National Cash Register Co.*, 373 Mass. at 105.

Nor is this a case in which public policy considerations justify the imposition of liability on the employer. To the contrary, in light of the incident at Miriam Hospital, to deny that Travenol acted within its discretion by discharging Siles would violate "the general principles that an employer is entitled to be motivated by and to serve its own legitimate business interests; that an employer must have wide latitude in deciding whom it will employ in the face of the uncertainties of the business world; and that an employer needs flexibility in the face of changing circumstances." *Fortune* v. *National Cash Register Co.*, 373 Mass. at 101-102.

We hold that the judge was correct in concluding that the evidence was insufficient to support a finding that the defendant's termination of the plaintiff's at-will employment was the product of bad faith. We further conclude that the testimony regarding Travenol's refusal to give Siles business references, even if believed, does not by itself support a finding that Siles was barred by Travenol from ever obtaining employment in the health care field or that such refusal would be improper in the light of the justifiable termination. Because we affirm the judgment by the Superior Court, we need not reach the other questions argued.

*Judgment affirmed.*