**Joseph M. WHELAN, Plaintiff,**

v.

**CAREERCOM CORPORATION, Defendant.**

**Civ. A. No. 88–1922.**

United States District Court,
M.D. Pennsylvania.

April 17, 1989.

MEMORANDUM

CALDWELL, District Judge.

This action is before the court on defendant, CareerCom's, motion to dismiss plaintiff, Joseph M. Whelan's, complaint pursuant to Fed.R.Civ.P. 12(b)(6). This is a diversity action controlled by Pennsylvania law.[1] Count I of the complaint alleges that defendant breached a written employment agreement with plaintiff requiring CareerCom to pay him stock options worth $100,-000 per year in 1987 and 1988. The remaining counts of the complaint, for negligent misrepresentation, breach of implied covenant of good faith, and wrongful discharge, arise from plaintiff's discharge from employment. Plaintiff was employed by defendant from November 18, 1987, until July 1, 1988. The motion can only be granted if plaintiff can prove no set of facts in support of his claims. *See Labov v. Lalley,* 809 F.2d 220 (3d Cir.1987).

*The Breach of Contract Claim for the Stock Options.*

Plaintiff can establish a breach only if the contract required defendant to provide plaintiff with $100,000 in options in both 1987 and 1988, as plaintiff has alleged. Plaintiff contends the facts and circumstances surrounding the making of the contract support his interpretation. Defendant argues the contract did not obligate it to grant the options, and any extrinsic evidence is inadmissible under the parol evidence rule since the agreement is unambiguous in regard to the options.

Under Pennsylvania law, when the terms of a written contract are clear and unequivocal, its meaning must be determined by the writing alone. *Mellon Bank, N.A. v. Aetna Business Credit, Inc.,* 619 F.2d 1001, 1009–1010 (3d Cir.1980). If, however, the contract terms are ambiguous, the court must construe their meaning. *Thermice Corp. v. Vistron Corp.,* 528 F.Supp. 1275, 1284 (E.D.Pa.1981), *aff'd without opinion,* 688 F.2d 825 (3d Cir. 1982). In construing a contract, the court may consider the situation of the parties

LeRoy Smigel and John W. Frommer, Smigel, Anderson & Sacks, Harrisburg, Pa., for plaintiff.

Christopher C. Conner, Shearer, Mette, Evans & Woodside, Harrisburg, Pa., for Careercom Corp.

1. Plaintiff is now a citizen of Florida but neither he nor defendant has contended that the law of any other jurisdiction should be applied. We see no reason to disturb the parties' implicit choice of Pennsylvania law.

and the circumstances under which the contract was made. *Mellon Bank*, 619 F.2d at 1010–11 (*quoting United Ref. Co. v. Jenkins*, 410 Pa. 126, 137–38, 189 A.2d 574, 580 (1963)). Such extrinsic evidence, when used to aid the court in its construction of the contract terms, is not barred by the parol evidence rule. *Mellon Bank*, 619 F.2d at 1010 n. 9.

In determining the propriety of using extrinsic evidence the question is whether the contract terms are ambiguous. A contract term is "ambiguous" when it is susceptible to two or more reasonable interpretations. *Thermice*, 528 F.Supp. at 1284. The portion of the contract at issue appears in paragraph four of the agreement and states, in part: "Employee's name shall be submitted for a grant of options to the Incentive Stock Option Committee or Compensation Committee for $100,000.00 in market value at the date of the grant in calendar year 1987 and 1988, as soon as legally possible, as the plan may permit." (complaint, Exhibit 2). Defendant contends the passage means "that Plaintiff's name would be submitted *for consideration* by the Stock Option Committee." (Defendant's brief at 9) (emphasis supplied). Plaintiff contends the passage means he would definitely receive $100,000 in options in both 1987 and 1988. We consider each of these a reasonable interpretation of an ambiguous contract term. Therefore, the motion to dismiss the contract claim will be denied.

### The Misrepresentation Claim

In Count II of his complaint, plaintiff seeks recovery based upon allegedly false representations negligently made by defendant's president during contract negotiations. Those representations are set forth in paragraph 8 of the complaint. There are four of them but plaintiff's brief limits the grounds of the misrepresentation claim to two false statements: (1) that defendant "was a rapidly expanding and growing company" and (2) that defendants' "executive employees were stable and secure." Plaintiff's brief also asserts that Count II (although clearly labeled negligent misrepresentation) sets forth factual averments supporting fraudulent misrepresentation as well.

Plaintiff relies upon *Lokay v. Lehigh Valley Cooperative Farmers, Inc.*, 342 Pa. Super. 89, 492 A.2d 405 (1985) to support the claim based upon the defendant's supposed financial health. That case permits an employee who has been induced by fraudulent misrepresentations to quit his former job and begin working for the defendant employer to recover "all pecuniary losses which result as a consequence of his reliance on the truth of the [defendant's] representations." *Id.* at 99, 492 A.2d at 410 (1985) (quoting *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 117, 464 A.2d 1243, 1257 (1983)) (brackets in *Lokay*). Defendant argues that *Lokay* is distinguishable. It also maintains that the parol evidence rule and an integration clause in the written agreement bar plaintiff's misrepresentation claim.

Initially, we note that defendant has apparently misperceived the nature of plaintiff's claim although we must admit that it has not been set forth with great clarity. Prior to plaintiff's employment, the parties' negotiations involved a written contract which they undoubtedly contemplated would be executed prior to plaintiff's tenure. But the contract was not executed at that time. Rather, a draft agreement (complaint, Exhibit 1) was submitted to plaintiff who made revisions to it, (*id.* ¶ 10), allegedly incorporating the terms of a verbal agreement the parties had been able to reach. The verbal agreement is set forth in paragraph 8 of the complaint and included, among other things, the representations upon which Count II is based. The plaintiff apparently went to work under the terms of the oral agreement on November 12, 1987, (complaint, ¶ 12), and did not execute the written agreement until May 27, 1988, which became binding on that date. (complaint, ¶ 9(e) of Exhibit 2). So plaintiff had two periods of employment, one under the oral agreement, and the other under the written agreement into which the oral agreement merged. (complaint, ¶ 9(g) of Exhibit 2).

Thus, the parol evidence rule and the integration clause would not be relevant to that portion of the employment relationship governed by the oral contract. We are also not entirely convinced that the integration clause automatically bars any claim for either negligent or fraudulent misrepresentation even as to the written agreement. Defendant cites *Harrison v. Fred S. James, P.A., Inc.*, 558 F.Supp. 438 (E.D.Pa.1983) in support of this argument, but *Betz Laboratories, Inc. v. Hines*, 647 F.2d 402 (3d Cir. 1981) and *Mancini v. Morrow*, 312 Pa.Super. 192, 458 A.2d 580 (1983) indicate that there may be serious difficulties in using the integration clause to bar a misrepresentation claim based upon fraud. Nevertheless, we need not address this issue because the allegedly false representations are insufficient to support such a claim under Pennsylvania law in any event—either as to negligence or fraud.

■ As noted, plaintiff's brief limits the basis of Count II to the false representation by the defendant's President that defendant "was a rapidly expanding and growing company." (complaint, ¶ 8). "[T]he elements that negligent and fraudulent misrepresentation have in common are false information, justifiable reliance, causation and pecuniary loss." *Browne v. Maxfield*, 663 F.Supp. 1193, 1202 (E.D.Pa. 1987) (brackets added). In the instant case, plaintiff's cause of action based upon the above averment fails on the essential element of causation. Plaintiff may have been induced to take the job with Career-Com by false statements concerning its growth and expansion but he does not allege that his reliance upon those false statements caused him to lose his job. *See Browne, supra*, 663 F.Supp. at 1203. The complaint only alleges that plaintiff was fired, first, without cause, (complaint, ¶ 13), and, second, to save the defendant the expense of paying him his 1988 stock option and the increased salary he was due for his promotion to Chief Financial Officer. (complaint, ¶ 31). These reasons are not necessarily related to a lack of growth by the defendant. In contrast, in *Lokay*, as defendant has correctly distinguished it, plaintiff had relied upon false financial

statements making the company look healthier than it really was, left his old job on the basis of those statements, and was later terminated for the express reason that the defendant could no longer afford to employ him.

■ The second basis for the misrepresentation claim is defendant's false statement that its "executive employees were stable and secure." (complaint ¶ 8). In the past, employees have been unsuccessful in using this type of allegation to support a breach of contract claim. *See Murray v. Commercial Union Insurance Co.*, 782 F.2d 432, 435 (3d Cir.1986) (assurances of a "future and lifetime career" and of employment for as long as it was mutually agreeable "are to vague to create employment for a term.") We believe it is also insufficient to sustain a misrepresentation claim. Initially, at least in a fraud action brought under Pennsylvania law, "[m]isrepresentation must be distinguished from mere 'puffing.'" *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 103, 337 A.2d 893, 903 (1975) (brackets added). The latter is not actionable. *See Forbis v. Reilly*, 684 F.Supp. 1317, 1321 (W.D.Pa.), *aff'd without opinion*, 862 F.2d 307 (3d Cir.1988). We believe that this proposition would also apply to negligently made statements. We therefore conclude as a matter of law that, in the context of pre-employment discussions, a general statement that a business's executives enjoy a stable and secure tenure is neither an actionable misrepresentation nor one upon which an employee could justifiably rely. This conclusion is supported by *Wilson v. Westinghouse Elec. Corp.*, 838 F.2d 286 (8th Cir.1988). In *Wilson*, a discharged employee brought a fraud claim under Missouri law which the Eighth Circuit Court of Appeals rejected as follows:

Wilson brings three different fraud theories. Wilson claims (1) that in discussing his pension rights before hiring, a Westinghouse employee led Wilson to believe that he would remain with the company until retirement, (2) that Westinghouse falsely told Wilson that he was training a younger replacement for the purpose of making Wilson available for

reassignment, and (3) that Westinghouse told Wilson his job was "permanent," rather than "temporary." Each of these claims essentially translates Wilson's contractual claim that he was promised employment until retirement into the language of tort. The District Court found that there was no evidence that any of these communications could have established a sufficiently concrete expectation of guaranteed employment upon which Wilson could have reasonably relied. For essentially the same reasons involved in Wilson's contract claim, we affirm the District Court's summary judgment for Westinghouse on his fraud theories. *Id.* at 291.

We adopt this rationale here and conclude that the similar allegations of the complaint in the instant case cannot withstand a motion to dismiss.

*The Claims For Breach of Implied Covenant of Good Faith and for Wrongful Discharge.*

■ These claims will be dealt with together since they share a common argument in their support by plaintiff. In Count III of his complaint, plaintiff alleges that defendant terminated his contract in violation of an implied covenant of good faith and fair dealing. In Count IV, plaintiff alleges he was wrongfully discharged by defendant because oral representations made to him prior to his employment, set forth in paragraph 8 of the complaint, established his right to be fired only for cause. As noted, two of the oral representations were that defendant was a rapidly expanding and growing company and that its executives were stable and secure. The remaining two were that plaintiff would be promoted to Chief Financial Officer in six months and that he would receive an equity position in the company. (complaint, ¶ 8).

Defendant argues that there can be "no claim under Pennsylvania law for breach of a duty of good faith and fair dealing where

the employment relationship is at-will." *Engstrom v. John Nuveen & Co.*, 668 F.Supp. 953, 958 (E.D.Pa.1987) (*citing Wolk v. Saks Fifth Ave., Inc.*, 728 F.2d 221, 225 (3d Cir.1984)). Plaintiff, citing *Siles v. Travenol Laboratories, Inc.*, 13 Mass.App. 354, 433 N.E.2d 103, *review denied*, 386 Mass. 1103, 440 N.E.2d 1176 (1982) (table), counters that such an action can be maintained when the employer intends to benefit financially from the discharge. Plaintiff avers that he was terminated "with the object of avoiding a grant of 1988 stock options and implementing the plaintiff's promotion [to Chief Financial Officer] and accompanying salary increase." (complaint, ¶ 31) (brackets added). *Siles* is also the sole authority cited by plaintiff in support of the wrongful discharge claim.

We deal with the latter claim first. Defendant correctly asserts that the employment relationship between the parties was at will. The written agreement—which governed the parties' relationship at the time of plaintiff's discharge on July 1, 1988 —specifically incorporates the Pennsylvania common law presumption in that regard. *See Darlington v. General Electric*, 350 Pa.Super. 183, 504 A.2d 306 (1986) (unless otherwise shown, Pennsylvania law presumes employment at will). Paragraph 1 of the agreement provides as follows: "Company hereby employs Employee and Employee hereby accepts employment by Company for the period and upon the terms and conditions contained in this Agreement. Said employment is at-will and may be terminated by either party with or without cause." [2] Further, the integration clause at paragraph 9(g) provides that the contract supersedes all prior and contemporaneous oral or written agreements. Therefore, we reject plaintiff's argument that the prior oral representations alleged in paragraph 8 of the complaint establish that plaintiff could not be discharged except for cause.[3]

---

**2.** Paragraph 5 does set forth conditions under which discharge for cause can occur but it also provides that: "The within paragraph shall not be construed to require a showing of such cause for termination at will by either party."

**3.** As noted, we have already rejected plaintiff's contention that the alleged misrepresentations concerning the financial growth of the company and its executives' stability were sufficient to state a claim which would invalidate the inte-

Since plaintiff's employment was at will, plaintiff can recover damages for wrongful discharge only when the "complaint discloses an allegation of (1) specific intent to harm the employee, or (2) violation of a clear mandate of public policy." *Darlington,* 350 Pa.Super. at 208, 504 A.2d at 318 (*quoting Jenkins v. United Steel Workers of America,* 522 F.Supp. 80, 85 (E.D.Pa. 1981)).

We conclude that plaintiff has failed to set forth allegations which could fit either of the above exceptions. Initially, nowhere in his complaint or in his brief on the instant motion does plaintiff even intimate that his discharge violated any public policy. Regarding the specific intent to harm exception, we reject plaintiff's contention that it is satisfied by averments that defendant intended to benefit itself financially by terminating plaintiff. Plaintiff's reliance upon *Siles, supra,* for this proposition is misplaced. *Siles* does recognize a cause of action for wrongful discharge when an employer has acted to benefit itself financially. But, contrary to plaintiff's contention, this Massachusetts standard is not the substantive equivalent of Pennsylvania's intent to harm test. It is more akin to a general intent to harm which the Pennsylvania Supreme Court has rejected as a basis for a wrongful discharge action.

> If a general intent, in the sense that an employer knew or should have known the probable consequences of his act, were all that a disgruntled employee need show in order to make out a cause of action, the privilege of discharge would be effectively eradicated, for some degree of harm is normally foreseeable whenever an employee is dismissed.

*Geary v. United States Steel Corp.,* 456 Pa. 171, 178, 319 A.2d 174, 177 (1974) (footnote omitted).

Our conclusion is buttressed by Pennsylvania Superior Court decisions elaborating upon the supreme court's specific intent to harm exception. In *Tourville v. Inter-*

*Ocean Insurance Co.,* 353 Pa.Super 53, 508 A.2d 1263 (1986), *allocatur denied,* 514 Pa. 619, 521 A.2d 933 (1987), the leading superior court case, the court set forth two ways a plaintiff could satisfy the exception. First, the plaintiff could set forth facts showing "disinterested malevolence" on the part of the employer; that is, "that there was no proper interest involved in the malevolent act. . . ." *Id.* at 56, 508 A.2d at 1265 (footnote omitted). In *Tourville,* this standard was not satisfied when the defendant employer had fired plaintiff for the less than praiseworthy reason that he had become too ill to do his job. Second, the plaintiff could allege that the discharge was done with an "ulterior purpose." Under this alternative, a plaintiff could recover even if the discharge was done with sufficient reason if, nevertheless, it was done "to harm the other party." *Id.* at 57, 508 A.2d at 1266. Such harm could be established by showing conduct "beyond the necessity of the justified harmful act." *Id.* at 58, 508 A.2d at 1266. Elaborating further, the superior court stated that "[t]he quality of maliciousness could be discovered by the lack of proportionality or the impropriety or viciousness with which a thing is done." *Id.,* 508 A.2d at 1266 (brackets added). The court concluded that this standard was also not satisfied. It affirmed the trial court's summary judgment against plaintiff on his wrongful discharge action.

*Tourville* indicates that plaintiff has failed to state a claim for discharge motivated by a specific intent to harm. This type of wrongful discharge depends heavily upon the subjective state of mind of the employer, the ill will which accompanies the outward conduct surrounding the discharge. *See e.g., Beyda v. U.S. Air, Inc.,* 697 F.Supp. 1394, 1397 (W.D.Pa.1988) (describing discharge with specific intent to harm as involving "personal animus"). Yet plaintiff himself alleges that he was discharged not because of any ill will felt for

gration clause. Hence, that clause may be invoked to bar plaintiff's reliance upon the allegations of paragraph 8 of the complaint. We express no opinion whether the remaining alle-

gations of that paragraph concerning a promise of a promotion and of an equity position in the company would compel a different result in another context.

him but only to avoid granting him his 1988 stock options and the salary increase accompanying his promotion. *Compare Mudd v. Hoffman Homes for Youth, Inc.*, 374 Pa.Super. 522, 529, 543 A.2d 1092, 1096 (1988) (allegation that plaintiff was fired "to *prevent* the vesting of pension benefits demonstrates a malicious desire to harm that will give rise to an action for wrongful discharge" when plaintiff was only two months shy of the service requirement for vesting) (emphasis supplied). Plaintiff's allegations fall short of showing the requisite "disinterested maliciousness" or "ulterior purpose" of intending to harm.

Therefore, plaintiff's claim for wrongful discharge in Count IV will be dismissed. Based upon the foregoing discussion, the same result follows for the claim in Count III for breach of the covenant of good faith and fair dealing since that count was predicated upon *Siles, supra,* and plaintiff's erroneously expansive reading of the intent to harm exception.

We will issue an appropriate order.

### ORDER

AND NOW, this 17th day of April, 1989, upon consideration of defendant's motion to dismiss, it is ordered that:

    1.  Counts II, III and IV of the complaint are hereby dismissed.

    2.  The motion is denied as to Count I.