Robert BIRRANE

v.

The MASTER COLLECTORS, INC.
and James Bailey.

Civ. No. JFM–89–2756.

United States District Court,
D. Maryland.

May 31, 1990.

**168**

Edward Birrane, Jr., Birrane, Harlan, Sharretts & Cooke, Baltimore, Md., for plaintiff.

Gil A. Abramson, Semmes, Bowen & Semmes, Baltimore, Md., for defendant.

## MEMORANDUM

MOTZ, District Judge.

Robert Birrane has brought this action against The Master Collectors, Inc. and its president, James Bailey. Birrane asserts contract and tort claims arising from the termination of his employment with Master Collectors. Bailey has moved to dismiss for lack of personal jurisdiction, and both defendants have moved to dismiss all of the counts in the complaint for failure to state a claim upon which relief can be granted.

### I.

On October 31, 1988, Birrane began work as the branch manager of Master Collectors' Philadelphia office. Master Collectors had recruited him for the position earlier that month. The parties signed a written employment contract and, without specifying the term of employment, agreed on a salary of $45,000 and a bonus of $5,000 for the first year.

Birrane alleges that he performed well on the job, received commendable job appraisals and frequent praise. However, in August 1989, Bailey allegedly induced Master Collectors to fire Birrane. Birrane claims that he was fired for trying to force Master Collectors to return to the legal straight-and-narrow path from which it had allegedly strayed. He claims that the company had engaged in various (but, as yet, unspecified) types of illegal conduct in the course of its business and that it tried to force him to do the same. Allegedly, when he refused to do so, he was discharged.

### II.

I will first address Bailey's motion to dismiss for lack of personal jurisdiction. Bailey has established several facts by an affidavit which he has submitted in support of his motion. He is a resident of Georgia and personally neither owns nor rents property in Maryland. In the last five years, he has visited Maryland once, in his capacity as president of Master Collectors for the purpose of visiting the corporation's Maryland office. He has had no contacts with Birrane in Maryland. During Birrane's eleven-month employment with Master Collectors' Pennsylvania office, Bailey met with him six to eight times and talked to him on approximately ten occasions, always in either Georgia or Pennsylvania.

Birrane has had the opportunity to take discovery from Bailey, and he is unable to establish that Bailey has personally had any more extensive contacts with Maryland than those set forth in his affidavit. Rather, Birrane argues that because Bailey is the president and principal shareholder of Master Collectors, the corporation's Maryland contacts should be attributed to Bailey for jurisdictional purposes. Thus, he contends that Bailey is subject to jurisdiction under subsections (b)(1), (b)(2) and (b)(4) of Maryland's long-arm statute. Md.Cts. & Jud.Proc.Code Ann. §§ 6–103(b)(1), (b)(2), (b)(4) (1989). Subsection (b)(1) applies to a person who transacts business in the state; subsection (b)(2) applies to a person who contracts to supply goods, services, etc., in the state; and subsection (b)(4) applies to a person who causes tortious injury in or outside of the state and who regularly does business in the state, engages in any other persistent course of conduct in the state or derives substantial revenue from goods, services, etc. used or consumed in the state.

■ As a preliminary matter, it should be noted that the "fiduciary shield" doctrine, upon which the parties have focused substantial attention, is not relevant here. That doctrine has evolved to immunize from personal jurisdiction an individual who has had in-state contacts exclusively as a corporate agent. *See, e.g., Umans v. PWP Services, Inc.*, 50 Md.App. 414, 420–21, 439 A.2d 21, 25 (1982); *Zeman v. Lotus Heart, Inc.*, 717 F.Supp. 373, 375 (D.Md. 1989). Assuming the continued viability of the doctrine under Maryland law, it has no application where, as in the present case, an individual defendant has not himself had in-state contacts.[1] Indeed, it is the very absence of such contacts by Bailey which prompts Birrane to argue that Master Collectors' contacts with Maryland should be attributed to him for jurisdictional purposes.

■ The attempted assertion of jurisdiction over Bailey fails for the more fundamental reason that the identities of Bailey and Masters Collectors cannot be equated with one another. An individual and a corporation of which that individual is the principal are separate legal entities. *See, e.g., United States v. Van Diviner*, 822 F.2d 960, 963 (10th Cir.1987). If grounds exist for "piercing the corporate veil" generally, the corporate veil can be pierced for

jurisdictional purposes. *Compare Holfield v. Power Chemical Co., Inc.*, 382 F.Supp. 388, 393 (D.Md.1974) (grounds to pierce corporate veil) *with Quinn v. Bowmar Publishing Co.*, 445 F.Supp. 780, 786 (D.Md.1978) (no grounds to pierce veil). Absent such grounds, however, there is no basis whatsoever for holding that merely because a corporation transacts business in the state, contracts to supply goods or services in the state or has other substantial contacts with the state, an individual who is its principal should be deemed to have engaged in those activities personally. It certainly cannot be presumed that in enacting the long-arm statute, the Maryland General Assembly intended a consequence so at variance with the most basic tenets of corporation law.[2]

Moreover, if the General Assembly did have such an intent, its action would have been unconstitutional. An individual who has chosen simply to transact business in a state through a valid and viable corporation has not necessarily "purposefully avail[ed]" himself of "the privilege of conducting activities within ... [that] State" in his individual capacity. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Nor can it be said that he would "reasonably anticipate being haled into court" in the state in his individual capacity by virtue of the corporation's

---

**1.** In *Western Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196, 1200 (4th Cir.1989), the Fourth Circuit indicated that the fiduciary shield doctrine may not be recognized under Maryland law. Following its own decision in *Columbia Briargate Co. v. First Nat'l Bank*, 713 F.2d 1052, 1064 (4th Cir.1983), *cert. denied*, 465 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 233 (1984), the Court stated that "the fiduciary shield rule is solely a matter of statutory construction under state law and is not required under the due process clause." 885 F.2d at 1200. The Court then noted that the Maryland Court of Appeals had recently emphasized that Maryland's long-arm statute is intended "to expand the exercise of personal jurisdiction to the limits allowed by the Due Process Clause...." *Id.* (quoting *Camelback Ski Corp. v. Behning*, 307 Md. 270, 274, 513 A.2d 874, 876 (1986), *vacated and remanded on other grounds*, 480 U.S. 901, 107 S.Ct. 1341, 94 L.Ed.2d 512 (1987), *reaff'd*, 312 Md. 330, 539 A.2d 1107 (1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 130, 102 L.Ed.2d 103 (1988)). A difficulty with this reasoning is that the Maryland Court of Appeals had previously made the same state-

ment concerning the reach of the state's long-arm statute, before the Maryland Court of Special Appeals decided *Umans v. PWP Services, Inc.*, 50 Md.App. 414, 439 A.2d 21 (1982), recognizing the fiduciary shield doctrine. *See, e.g., Geelhoed v. Jensen*, 277 Md. 220, 226, 352 A.2d 818, 822 (1976).

**2.** It might be argued that a highly-salaried corporate officer or other corporate employee or a shareholder to whom dividends have been paid has personally "derive[d] substantial revenue from goods ... [or] ... services ... used or consumed in the State" if the corporation has itself derived substantial revenue from such goods or services. Md.Cts. & Jud.Proc.Code Ann. § 6–103(b)(4) (1989). However, the factual difficulties presented in tracing the particular source of salaries or dividend payments are virtually insurmountable, and, constitutional considerations aside, there is no legislative history suggesting that the General Assembly intended that courts should embark on such a radical inquiry in deciding jurisdictional issues.

activities there. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *see also Calder v. Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984) (employees' contacts with the state "are not to be judged according to their employer's activities there"); *Shaffer v. Heitner,* 433 U.S. 186, 213–16, 97 S.Ct. 2569, 2584–86, 53 L.Ed.2d 683 (1977) (individuals' status as directors and officers of a corporation insufficient to sustain jurisdiction over them in the state of incorporation absent a statute to the contrary). No principle is more firmly embedded in corporation law than that a corporation exists separately and independently from its principals, and business people are entitled to rely upon the maintenance of that principle in structuring and managing their affairs.[3]

### III.

Birrane has asserted claims against the remaining defendant, Master Collectors, for breach of contract, breach of an implied covenant of good faith and fair dealing, wrongful discharge, conspiracy, defamation and fraud.[4] The parties apparently are agreed that Pennsylvania law applies to all of the claims.

■ Plaintiff does not contest the dismissal of his conspiracy claim. Plaintiff has not alleged any details of the time, place and alleged effect of the conspiracy, *see Turley v. Hall's Motor Transit Co.,* 296 F.Supp. 1183, 1187 (M.D.Pa.1969), and, in any event, plaintiff's conclusory allegations would fail because they allege a conspiracy only between Master Collectors and its agents. The agents of a single corporation cannot conspire among themselves. *See, e.g., Wells v. Thomas,* 569 F.Supp. 426, 435–36 (E.D.Pa.1983) (university hospital employees cannot conspire among themselves); *cf. Keddie v. Pennsylvania State Univ.,* 412 F.Supp. 1264, 1276 (M.D.Pa. 1976) ("A university cannot conspire with itself any more than a person or corporation can").

■ Birrane must submit a more definite statement in connection with his claim for fraud. A fraud claim must be pled with particularity, Fed.R.Civ.P. 9(b), and Birrane has utterly failed to state the time, place and content of the allegedly false misrepresentations and the benefits which Master Collectors received or the injuries which he suffered as a result of the fraud. *DuSesoi v. United Refining Co.,* 540 F.Supp. 1260, 1272–73 (W.D.Pa.1982); *Seligson v. Plum Tree, Inc.,* 361 F.Supp. 748, 756 (E.D.Pa. 1973), *recon. denied,* 61 F.R.D. 343 (E.D. Pa.1973).

However, Master Collectors' motion to dismiss the other claims will be denied without prejudice to raising the issues posed by the motion anew by way of a motion for summary judgment at the conclusion of discovery. Briefly stated, the reasons for this ruling are as follows:

*Claims for Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing*

■ Birrane's claims for breach of contract and breach of the covenant of good faith and fair dealing relate to the non-payment of a $5,000 bonus allegedly due him at the end of his first year of employment. I am fully satisfied that Birrane has alleged sufficient facts to set forth a contract claim. Of course, if the alleged contract does not exist or contains ambiguities which must be resolved against Birrane, Master Collectors will be entitled to sum-

---

**3.** Full Faith and Credit clause considerations also appear to be relevant to the issue here presented. At the least, those considerations dictate that a long-arm statute be construed to prevent a result which would summarily vitiate the corporate law of another state. To the extent that such a harmonious construction is impossible, the validity of the long-arm statute, in such circumstances as are here presented, would be subject to serious question. *See generally Nevada v. Hall,* 440 U.S. 410, 421, 424, 99 S.Ct. 1182, 1190, 59 L.Ed.2d 416 (1979); *Mil-waukee County v. M.E. White Co.,* 296 U.S. 268, 276–77, 56 S.Ct. 229, 233–34, 80 L.Ed. 220 (1935).

**4.** Birrane has also asserted claims solely against Bailey for interference with contractual and business relations. Since Bailey's motion to dismiss for lack of personal jurisdiction is being granted, there is no need to consider the sufficiency of Birrane's pleading of those claims.

mary judgment. *See generally Whelan v. Careercom Corp.*, 711 F.Supp. 198, 200 (M.D.Pa.1989).

Pennsylvania courts have been hesitant to imply a general covenant of good faith into contractual agreements, *see, e.g., Creeger Brick & Building Supply, Inc. v. Mid–State Bank & Trust Co.*, 385 Pa.Super. 30, 560 A.2d 151, 153–54 (1989), particularly contracts involving an employment relationship, *Baker v. Lafayette College*, 350 Pa.Super. 68, 504 A.2d 247, 255 (1986) (specifically declining to decide if obligation of good faith should be implied into employment relationship), *aff'd*, 516 Pa. 291, 532 A.2d 399 (1987); *but see Johnson v. Provident Nat'l Bank*, 700 F.Supp. 817, 821 (E.D.Pa.1988) (no duty of good faith when employment relationship is at-will). Nevertheless, Pennsylvania law may support the implication of a covenant of good faith in connection with a particular contractual undertaking such as the payment of a year-end bonus. For example, in *Baker* the court stated that the "College's obligation to act in good faith extends only to the performance of those contractual duties it has chosen to assume." 504 A.2d at 255–56 (duty of good faith implied with respect to contractual provision for comprehensive evaluation and review process).

*Wrongful Discharge*

 Under Pennsylvania law an employee may maintain a tort action for wrongful discharge if he was fired either (a) in violation of an important public policy, or (b) in circumstances evidencing the employer's specific intent to harm the employee. *See Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974); *Darlington v. General Elec. Co.*, 350 Pa. Super. 183, 504 A.2d 306 (1986). Under the "public policy" prong of wrongful discharge, as a general proposition, the pertinent case law provides little protection to persons who allege that they were "whistle blowers." *See Geary* 319 A.2d at 178–79 (no protection for employee who questioned safety of employer's product); *Mudd v.*

*Hoffman Homes for Youth, Inc.*, 374 Pa. Super. 522, 543 A.2d 1092 (1988) (no protection for employee who bypassed normal management channels in alleging drug and alcohol abuse problems); *Rossi v. Pennsylvania State University*, 340 Pa.Super. 39, 489 A.2d 828 (1985) (no protection for employee who complained about management problems). However, Pennsylvania law does provide protection for an employee who was discharged because he refused to commit a criminal act on his employer's behalf. *See Hansrote v. Amer. Industrial Technologies, Inc.*, 586 F.Supp. 113 (W.D. Pa.1984) (protection for employee discharged for refusing to participate in bribery scheme), *aff'd*, 770 F.2d 1070 (3d Cir. 1985); *McNulty v. Borden, Inc.*, 474 F.Supp. 1111, 1119 (E.D.Pa.1979) (protection for employee discharged for refusing to participate in illegal pricing scheme). Here, in the memorandum which he has filed in opposition to the motion to dismiss, Birrane alleges that he was fired for his protest of, and his refusal to participate in, Master Collectors' alleged illegal business practices. This allegation cures any technical omission in the complaint itself.[5]

By alleging that Master Collectors charged him "willfully and maliciously," Birrane has also stated a wrongful discharge claim under the "specific intent to harm" theory. Although he has not specifically alleged either "disinterested malevolence" or "ulterior purpose"—the alternative elements required by Pennsylvania law, *see Tourville v. Inter–Ocean Ins. Co.*, 353 Pa.Super. 53, 508 A.2d 1263, 1265–66 (1986) *appeal denied*, 514 Pa. 619, 521 A.2d 933 (1987)—this technical pleading issue should not prevent the litigation from proceeding through discovery.

*Defamation*

Although plaintiff's allegations concerning defamation could be more specific and focused, this is not a case where it is apparent from the face of the complaint that no defamation claim can be stated as a matter

---

**5.** If Birrane's wrongful discharge ultimately survives a motion for summary judgment, his statement of that claim should be amended in the pretrial order to add that he was discharged not only because of his protesting of Master Collectors' illegal practices but because of his refusal to participate in them as well.

of law. *Compare Wendler v. DePaul,* 346 Pa.Super. 479, 499 A.2d 1101, 1103 (1985) (supervisor's confidential report on employee and his work performance non-defamatory); *Gordon v. Lancaster Osteopathic Hosp. Ass'n,* 340 Pa.Super. 253, 489 A.2d 1364, 1368 (1985) (physicians' letters of evaluation on peer non-defamatory). Accordingly, it is more sensible and expeditious to flush out any inadequacies in Birrane's claim by means of a summary judgment motion after discovery has been completed than by skirmishing over pleading.

A separate order effecting the rulings made in this memorandum is being entered herewith.

### ORDER

For the reasons stated in the memorandum entered herein, it is this 31st day of May 1990

ORDERED

1. The motion to dismiss for lack of personal jurisdiction filed by defendant James Bailey is granted and Bailey is dismissed as a defendant;

2. Counts VI and VII which are asserted solely against defendant Bailey are dismissed;

3. Count IV alleging conspiracy is dismissed for failure to state a claim upon which relief can be granted;

4. Plaintiff shall submit a more definite statement concerning his claim for fraud stated in Count VIII on or before June 14, 1990; and

5. Defendant Master Collectors' motion to dismiss is denied as to Counts I, II, III and V.