NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-1100                                          Appeals Court

GUARDIANSHIP OF RAYA.[1]


No. 22-P-1100.

Hampshire.      July 11, 2023. - November 14, 2023.

Present:  Green, C.J., Ditkoff, & Hodgens, JJ.


Guardian.  Minor, Guardian ad litem.  Parent and Child, Custody
     of minor.  Probate Court, Guardian.  Practice, Civil,
     Appointment of guardian.


     Petition for appointment of a guardian for a minor filed in
the Hampshire Division of the Probate and Family Court
Department on April 3, 2020.

     The case was heard by Linda S. Fidnick, J.


     Jeanne M. Kaiser for the mother.
     Jennifer Wang for the child.


     HODGENS, J.  Weeks after entering an order appointing the

child's maternal grandmother and uncle as her temporary

guardians, a judge of the Probate and Family Court found that

there was "insufficient evidence" that the mother was "presently

_____

     [1] A pseudonym.

unfit."  The judge ordered prompt reunification with the mother but offered a "period of transition" if the child "refuse[d] to return to her mother's home."  Months later, with the child balking at reunification and the transition not going well, the judge reinstated the temporary guardianship.  Almost two years after the original temporary guardianship, the child turned fourteen years old and nominated her maternal grandmother and uncle as guardians.  Following a trial, the judge appointed the grandmother and uncle as coguardians after concluding that the mother was unfit due to the child's unwillingness to be parented by the mother and the mother's inability to remedy the near total breakdown in the parent-child relationship.  We reverse the guardianship decree.

Background.  This matter came before the Probate and Family Court through a petition and verified motion filed by the child's grandmother and uncle on April 3, 2020, seeking appointment as guardians and alleging emergency circumstances.  On the same day, a judge allowed the petition and verified motion, appointed the grandmother and uncle as temporary guardians, and noted the exigent nature of the guardianship order:  "The Petitioners are concerned about the Mother's ability to protect the child from exposure to Covid-19, a significant history of domestic violence, and an inability to maintain a hygienic living environment for the child as well as

the child's expressed fear and refusal to live with the Mother." The judge scheduled a hearing on June 1, 2020, and set June 3 as the expiration date for the temporary guardianship. In the interim, the judge appointed counsel for the mother and the child.

Following the hearing on June 1, the judge declined to extend the temporary guardianship: "After hearing, the Court finds that there is insufficient evidence that [the mother] is presently unfit to parent [the child]." The judge ordered the mother to submit to a "psychological and substance use disorder evaluation." The judge authorized a "period of transition" if the child "refuses to return to her mother's home upon the expiration of the temporary guardianship on June 3." The period of transition would allow for "several weeks in which [the child] spends part of each day with her mother, returning to sleep at her grandmother's home at night." The judge also ordered all parties to participate in family therapy during the transition period.

Four months later, after a hearing in October 2020, the judge allowed the grandmother and uncle's petition to reinstate the temporary guardianship. According to the judge, the transition period had "not gone well," especially after the child objected to the mother's efforts to integrate the mother's current boyfriend and the boyfriend's children "into the

picture."  The judge expressed particular concern about the mother's decision to go on vacation in Delaware with the boyfriend and his children, while the child refused to accompany her.  As the judge put it, "This caused a rupture in their reunification of three weeks, first because of the vacation and then due to the [fourteen] day quarantine period necessitated by a trip to a state that is not on Massachusetts' acceptable location list."  The judge concluded that she had "no choice" but to allow the petition because the child "is living full-time with her maternal grandmother, and reunification is stalled." Again attempting to advance reunification, the judge ordered parenting time on a "progressive schedule" that would culminate with the child living with her mother by December 1.

Over the next eighteen months, the temporary guardianship was reviewed and extended six times.  In December 2020, the judge concluded that "re-unification is not progressing as had been hoped" and established a reduced schedule of parenting time to enable the child to split her time between living with her mother and her grandmother.  By June 2021, the judge noted, "The goal is [to resume] the parenting schedule set forth in the December 14, 2020 Temporary Order, but given [the child's] reticence, this schedule shall not resume immediately."  By October 2021, the child refused to spend any time with her mother.  The child also refused to participate in any meaningful

way in reunification family therapy. The mother continued to invite the child to various activities, sent text messages to her daily, and expressed a willingness to do any activity chosen by the child. The mother also submitted to a psychological evaluation.

On April 27, 2022, the first day of a two-day trial began regarding the guardianship petition. Days later, on May 4, 2022, the child, having reached the age of fourteen, filed a court form entitled "Notarized and Verified Consent or Nomination by Minor." By filing the form and reaching the requisite age of fourteen, the child nominated her maternal grandmother and uncle as guardians pursuant to G. L. c. 190B, § 5-207 (a). The trial concluded on May 17, 2022.

The judge issued findings and rulings on July 15, 2022, and noted the absence of any abuse or neglect as well as the absence of any substance use disorder or mental health concern that would prevent the mother from parenting. The judge concluded the mother was unfit because of her inability to remedy the near total breakdown in the parent-child relationship.

Discussion. A court may appoint a guardian for a minor if, among other reasons, "the court finds the parents, jointly, or the surviving parent, to be unavailable or unfit to have custody." G. L. c. 190B, § 5-204 (a) (v). "Parental unfitness must be determined by taking into consideration a parent's

character, temperament, conduct, and capacity to provide for the child in the same context with the child's particular needs, affections, and age."  Adoption of Mary, 414 Mass. 705, 711 (1993).  Unfitness contemplates "grievous shortcomings" that would put the child's welfare "much at hazard."  Petition of New England Home for Little Wanderers to Dispense with Consent to Adoption, 367 Mass. 631, 646 (1975).  The party seeking the guardianship, here the child's grandmother and uncle, had the burden of proving by clear and convincing evidence that the mother was unfit.  See Guardianship of Kelvin, 94 Mass. App. Ct. 448, 456 (2018).  After reviewing the record, we conclude that the child's grandmother and uncle did not meet their burden and reverse the guardianship decree.

The record lacks any suggestion of unfitness based upon the character, temperament, or conduct of the mother.  Cf. Adoption of Mary, 414 Mass. at 711.  The mother is a single parent, with some college-level education, and works about fifty hours per week.  The mother maintains a "spacious" studio apartment with "room dividers" and plenty of room for her daughter.  Throughout the court proceedings, the mother participated in parenting time, family counseling, and a psychological evaluation. Indeed, the judge noted the absence of any instances of abuse or neglect by the mother, and she also noted the absence of any substance use disorder or mental health concern that would

prevent the mother from parenting.  The judge focused instead on the mother's inability to remedy the breakdown in the parent-child relationship and her limited insight into the child's feelings.  We conclude that the mother's lack of success at reconciliation does not demonstrate the requisite "high degree of probability" demanded by clear and convincing evidence that the mother is an unfit parent.  Cf. Adoption of Iris, 43 Mass. App. Ct. 95, 105 (1997), S.C., 427 Mass. 582 (1998), quoting Tosti v. Ayik, 394 Mass. 482, 493 n.9 (1985), cert. denied, 484 U.S. 964 (1987).

"Unfitness is a concept which cannot be applied in the abstract but requires careful consideration, on the facts of a given case, of the capacity of parents to care for their children."  Petitions of the Dep't of Social Servs. to Dispense with Consent to Adoption, 18 Mass. App. Ct. 120, 125 (1984). The child contends that parental unfitness may be found "[w]hen children refuse to return home and when parents cannot parent due to an impasse in the parent-child relationship."  We disagree.  Unfitness may be established by considering the specialized needs of a child "when combined with the deficiencies of a parent's character, temperament, capacity, or conduct."  Petitions of the Dep't of Social Servs. to Dispense with Consent to Adoption, supra.  Although the child expressed a preference for her grandmother and uncle, the present case

lacked the requisite parental deficiencies that would warrant a finding of unfitness. For example, this is not a case where the mother was intransigent and made no effort at reestablishing a relationship. See Custody of a Minor, 383 Mass. 595, 601 (1981) (unfitness where child refused to return home and mother "consistently and persistently refused to take steps" to address psychological rift with child). Nor is this a case where the mother suffered from any mental illness or substance use issue that would impair her ability to parent. See Adoption of Arthur, 34 Mass. App. Ct. 914, 914 n.2 (1993) (unfitness where child expressed desire to be adopted and mother "beset with a substantial mental illness and emotional instability exacerbated by alcoholism"). This is also not a case where the mother put the child at risk of harm. See Adoption of Daisy, 77 Mass. App. Ct. 768, 783 (2010), S.C., 460 Mass. 72 (2011) (unfitness where child unwilling to have contact with mother who disbelieved child's claim that her father sexually abused her, and that disbelief "made it unsafe" to return to mother's care due to the risk of further sexual abuse and psychological harm).

We reject the child's contention that her "refusal to be parented" by the mother was a "symptom" and "obvious manifestation" of the mother's unfitness. Our jurisprudence squarely rejects equating a child's custody preference -- no matter how stubbornly expressed -- with unfitness. While

"entitled to weight" in the analysis, the child's preference is "not determinative." Care & Protection of Georgette, 439 Mass. 28, 36 (2003). The child's preference for her grandmother and uncle did not prove the mother had "grievous shortcomings" that would put the child's welfare "much at hazard." Petition of New England Home for Little Wanderers to Dispense with Consent to Adoption, 367 Mass. at 646. Although a judge must carefully consider that preference, a teenager cannot render her parent unfit by the simple expedient of refusing to engage with that parent.

The child's nomination of her grandmother and uncle as guardians is also not determinative. Pursuant to G. L. c. 190B, § 5-207 (a), "The court shall appoint a person nominated by the minor, if the minor is [fourteen] or more years of age, unless the court finds the appointment contrary to the best interest of the minor." Before displacing a parent's rights and responsibilities and appointing a guardian for a minor in the circumstances presented here, a court must first find the parent "to be unavailable or unfit to have custody." G. L. c. 190B, § 5-204 (a) (v). See Guardianship of Kelvin, 94 Mass. App. Ct. 448, 453 (2018), quoting Matter of Hilary, 450 Mass. 491, 496 (2008) ("It is well established that 'parents have a fundamental liberty interest in the care, custody, and management of their children'"). The judge properly considered the nomination as

further evidence of the child's strong preference but did not suggest, nor do we, that the nomination dispensed with the judicial obligation to assess parental fitness.

We also reject the child's alternative argument that a "constellation" of other factors supports a conclusion of unfitness. According to the judge's findings, for the first four years of the child's life (2008-2012), the mother and child lived with the grandmother. The mother and grandmother worked cooperatively to raise the child, whose father was not involved in the child's life and had left the country before she was born. Soon after the mother and the child obtained their own apartment, the child "struggled to regulate her emotions" and experienced tantrums. The grandmother continued to assist in caring for the child, and the uncle provided some support. In 2018, the mother and child moved in with the mother's erstwhile boyfriend. On one occasion while the child, the mother, and that boyfriend were away on vacation, the grandmother found the apartment in a state of "total chaos" with neglected guinea pigs, items broken or soaked in wine, and five large containers of vodka. At some point, the mother and the boyfriend became engaged, but the relationship turned unhealthy and ended following domestic abuse witnessed by the child. The child returned to live with the grandmother, and the mother followed months later. After about six months, the mother secured

another apartment, but the child refused to move in with her because of the prospect of sharing the apartment with two male housemates she did not know. The uncle decided to file the guardianship petition because he believed the mother's insistence on the child moving into the apartment was "upsetting to the child."

These findings show the judge's diligence in examining the background of the parties' evolving relationships over the course of more than a decade, but they do not speak to "current data" or even "prognostic evidence" that would bear on the mother's fitness at the time of the trial. Petitions of Dep't of Social Servs. to Dispense with Consent to Adoption, 18 Mass. App. Ct. at 126. "[I]solated problems in the past or stale information cannot be a basis for a determination of current parental unfitness." Id. Although the child witnessed the incident of domestic violence perpetrated by the former boyfriend, the judge concluded that the mother "made the appropriate decision to end the relationship and immediately sought an abuse prevention order." We also note that the child's concern about potential "male housemates" was no longer an issue at the time of trial because the mother moved into a new apartment where she lives alone. Even if reflecting some unspecified deficiencies on the part of the mother at the time of the trial, this background does not constitute "full, clear

and decisive" proof of unfitness as required by the standard of clear and convincing evidence.  <u>Adoption of Iris</u>, 43 Mass. App. Ct. at 105, quoting <u>Callahan</u> v. <u>Westinghouse Broadcasting Co.</u>, 372 Mass. 582, 584 (1977).

   <u>Conclusion</u>.  While "much must be left to the trial judge's experience and judgment" in these matters, <u>Petition of New England Home for Little Wanderers to Dispense with Consent to Adoption</u>, 367 Mass. at 646, "State intervention in the parent-child relationship" may be justified only when courts apply governing legal standards with the utmost circumspection. <u>Custody of a Minor</u>, 377 Mass. 876, 882 (1979).  The guardianship petition here lacked the required proof, by clear and convincing evidence, that the mother was "unfit."  G. L. c. 190B, § 5-204. Therefore, the decree appointing the child's grandmother and uncle as coguardians is reversed.

<u>So ordered</u>.