NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1106

GUARDIANSHIP OF WILLIAM.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The father of the minor child appeals from a decree and order of the Probate and Family Court granting guardianship of the child to the child's maternal grandparents.[2] In essence, the father contends that we should vacate the decree because the record does not support the Probate and Family Court judge's finding of unfitness.[3] We affirm.[4]

Background. The child was born in 2010. The mother and the father never married. The child lived with the mother and the father for the first three years of his life but spent most weekends at the maternal grandparents' home. In 2014, the

---

[1] A pseudonym.

[2] The mother of the child died in February of 2020.

[3] Our review is hampered somewhat by the lack of citations in the father's brief and his failure to comply with the rules of appellate procedure. That notwithstanding, we have reviewed the entire record on appeal, and address the substance of his claims herein.

[4] Nothing in this decision should be construed to indicate that the father does not love his child.

mother was hospitalized for several weeks.  During this period, the child spent a weekend with the grandparents.  When the grandparents did not return the child to the father at the end of the weekend, the father called the police.  The father then allowed the child to spend another weekend with the grandparents, after which he contacted the police again.  The police went to the grandparents' home, but upon their arrival learned that the mother was living in the home as well, and thus did not remove the child.[5]  The mother remained there until her death in February 2020, and the child continues to reside there. From approximately 2014 until November 2020, the father "had virtually no role" in the child's life, and the child was cared for by the mother and the grandparents.

The father has a criminal history.  In 2016, he was incarcerated for assault and battery on a family member, and "[a]round the same time, he served another sentence in the house of corrections for assault."  The mother also had a restraining order against the father.

On February 4, 2020, while the mother was on life support, the grandparents petitioned for guardianship of the child and obtained temporary guardianship.  On February 12, 2020, the father filed an objection to the guardianship.  The temporary

---

[5] Following the mother's release from the hospital, she and the child moved into the grandparents' home.

order of guardianship was extended several times.  The father had weekly visits with the child, either in-person or virtual.  The father was also encouraged to communicate with the child via letter or e-mail, as discussed infra.

Following a trial on the grandparents' petition, the judge issued a decree and order of appointment of guardianship.  In her findings supporting the decree, the judge determined that the "father lacks the capacity" to meet the child's needs, and that his communication with the child "demonstrate[s] that he does not understand [the child's] needs, particularly in light of the recent loss of his mother."  The judge also highlighted the "strong, positive bond" that the child has with the grandparents, finding that "the forced removal of [the child] from their care would likely seriously harm [him]."

The judge found, by clear and convincing evidence, that the father was presently unfit and that it would be in the child's best interest to live under the guardianship of the grandparents.  The judge increased the father's parenting time with the child, "so that [the father and the child] may work on improving their relationship."

Discussion.  "[P]arents have a fundamental liberty interest in the care, custody, and management of their children."  Matter of Hilary, 450 Mass. 491, 496 (2008), citing Matter of Angela, 445 Mass. 55, 61-62 (2005).  However, a judge may appoint a

guardian for a minor if, among other reasons, the judge "finds the parents, jointly, or the surviving parent, to be unavailable or unfit to have custody." G. L. c. 190B, § 5-204 (a). See Guardianship of Estelle, 70 Mass. App. Ct. 575, 578 (2007) (custody of child belongs to parent unless parent is unfit). If a judge "finds that a qualified person seeks appointment, venue is proper, the required notices have been given, the conditions of [G. L. c. 190B, §] 5-204 (a) have been met, and the welfare and best interest of the minor will be served by the requested appointment, [the judge] shall make the appointment." G. L. c. 190B, § 5-206 (c). "Although the appointment of a guardian displaces the parent's rights and responsibilities for the duration of the guardianship (except as provided in the decree or otherwise by law), it does not terminate them." Guardianship of Kelvin, 94 Mass. App. Ct. 448, 453 (2018). Accordingly, "a parent retains the right to later petition for modification or termination of a guardianship involving their child." Id.

In the present case, the father argues, inter alia, that the evidence and the judge's consideration thereof was insufficient to justify the decree and order of guardianship. He first claims that the judge erred in finding that he "is unfit to parent [the child] in light of the lengthy period during which [the child] has been raised by, and has bonded with, the [grandparents], and in which [the] [f]ather has had

virtually no role in [the child's] life."  Contrary to this argument, the evidence at trial supported the judge's finding that the child has lived with the grandparents for the past eight years, and that the father did not reach out to the grandparents since the child has been in their care.  There was also evidence that the mother "had a restraining order against the father" while she and the child were living with the grandparents, and that the father spent time in the house of correction.  Both of these circumstances contributed to the father's absence from the child's life.  Where, as here, the record supports the judge's finding, we cannot conclude that the judge's finding was clearly erroneous.  See Adoption of Paula, 420 Mass. 716, 729 (1995) ("judge's finding[] [of unfitness] will be disturbed only it [it] [is] clearly erroneous").

The father next challenges the judge's findings that he "lacks the capacity to meet the special needs of [the child] upon removal" and that "his letters to [the child] demonstrate that he does not understand [his] needs, particularly in light of the recent loss of his mother."  The claim is unavailing. The grandmother testified that the father told the child in letters "to man up and come live with [him]."  The father also wrote letters telling the child that the "grandfather was playing childish games," that the grandparents are "liars" and "sick in the head," that the father "loves [him] so much that it

made mom jealous of [him]," and that the grandparents "are unreliable people who care more about themselves than about him."  The judge determined that the father's letters "demonstrate that he does not understand [the child's] needs, particularly in light of the recent loss of his mother."  The totality of the facts in the record supports this determination.  Indeed, the record shows that the father had a practice of "consistently put[ting] emphasis on [his] own psychological state, instead of attending to [the child's] emotional needs," thus contributing to the judge's finding of his unfitness.  Adoption of Rhona, 63 Mass. App. Ct. 117, 122 (2005).

The father also takes issue with the judge's finding that "it is in [the child's] best interests for the [grandparents] to be appointed his co-guardians."  We discern no error in this determination in view of the substantial testimony at trial describing how the child "has formed a strong, positive bond with [the grandparents] and the forced removal of [the child] from their care would likely seriously harm [him]."  The grandparents testified to their strong bond with the child and their deep involvement in his life and daily routine.  See Estelle, 70 Mass. App. Ct. at 581-583.  The judge credited this evidence and the record supports her finding that it is in the child's best interests to remain with his grandparents and that they be appointed his coguardians.

Finally, we are not persuaded by the father's argument that the judge's findings as a whole are impermissibly sparse and do not support a finding of unfitness. The record, including the trial transcript and the judge's written findings, supports and confirms the judge's careful, thorough, and attentive review and consideration of the evidence. Furthermore, the record supports the judge's determination of unfitness, by clear and convincing evidence, in view of, inter alia,[6] the evidence of the father's lengthy absence from the child's life, criminal history, and inability to understand and meet the child's emotional needs. Accordingly, we affirm.

<u>Decree and order of appointment of guardian, as corrected, affirmed</u>.

By the Court (Wolohojian, Neyman & Shin, JJ.[7]),

Assistant Clerk

Entered:  January 16, 2024.

---

[6] To the extent we have not discussed other claims raised by the father, they have not been overlooked. We see nothing in them that warrants overturning the judge's findings. See <u>Commonwealth</u> v. <u>Sosa</u>, 493 Mass. 104, 124 n.12 (2023).

[7] The panelists are listed in order of seniority.