NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1069

GUARDIANSHIP OF JOSETTE.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The mother of Josette appeals from a decree and order of the Probate and Family Court granting guardianship of Josette to the child's maternal grandmother. The mother argues that we should vacate the decree because the record does not support the judge's finding of unfitness. We affirm.

Background. Josette was born in 2014. She was seven and eight years old at the time of trial; mother was twenty-nine years old. Josette lived with the mother from birth until September 2018. During this period, the mother and Josette lived in several different places. For the first six months of the child's life, they lived with friends of the mother in Connecticut. They then moved to Worcester, where they lived with the mother's cousin for approximately one year. The following year, they moved in with another cousin for a year.

_____

[1] A pseudonym.

During this period, the Department of Children and Families (DCF) received multiple 51A reports alleging neglect of the child by the mother. One report alleged that the mother had neglected Josette by discontinuing formula when the child was only six months old. DCF supported the allegations and established an action plan for the mother, which included participating in parenting classes and securing public benefits and stable housing.[2]

After living in Worcester for approximately two years, the mother and Josette moved in with the mother's then boyfriend, who physically abused both the mother and Josette. The boyfriend hit Josette with a belt. In response to this abuse, the mother dropped Josette off at the maternal grandmother's home, and then requested that the maternal grandmother bring Josette to live with the child's aunt, where she lived for approximately eleven months. During this time, the mother continued to live with her then boyfriend, who continued to abuse her physically and financially. In 2019, the mother moved in with her brother for short a period of time, but was asked to move out after having male visitors which her brother had

_____

[2] DCF received two additional 51A reports alleging neglect of the child, however, one report was ultimately not supported and the other report was screened out.

forbidden.  In July 2019, after leaving her brother's house, the mother moved in with the maternal grandmother.

After Josette and the mother had lived apart for eleven months, Josette in August 2019 joined the mother at the maternal grandmother's home.  During this time, the maternal grandmother took Josette to all of her medical appointments, enrolled her in preschool, and cared for her when she was sick.  In December 2019, the grandmother informed the mother that she would need to obtain alternative housing because the grandmother planned to travel to Florida for an extended period of time.  When the mother did not obtain housing by the time the grandmother was leaving, the  grandmother took Josette with her to Florida to allow the mother to focus on obtaining housing.  Although the mother planned to bring Josette back to Massachusetts within a month, that did not happen and Josette lived in Florida with the grandmother until May 2020, when they returned to Massachusetts.  During this time, the mother communicated by phone with the child, but had no in person contact with her.

On July 10, 2020, the grandmother filed a petition for guardianship of Josette and requested that she be appointed temporary guardian to prevent Josette from being removed from her care.  The court found that no emergency existed to require the appointment of a temporary guardian and denied the grandmother's request.  The court also prepared an action plan

3

to provide services for the mother to help her to improve her parenting skills. Josette continued to reside with the grandmother during this time and the mother was permitted to have designated parenting time with the child until the trial took place on September 19, 2022.

Partly because of the physical abuse Josette suffered at the hands of the mother's previous boyfriend, Josette has been diagnosed with generalized anxiety disorder and post-traumatic stress disorder. The judge found that the mother has dismissed the significance of Josette's mental health symptoms and needs. The mother at one point called the child's distressed reaction "fake." Josette has also expressed to her therapist that she feels fear and anxiety about the mother not always being truthful with her, being left alone by the mother, being physically harmed, and being forced to leave the home of her grandmother. The judge also found that the mother "has actively interfered with [the child's] progress" by telling the child not to share certain information with her therapist and by preventing the child from receiving psychiatric care.

At the time of trial, the mother experienced instability in both her housing and income. While the mother did have her own apartment, the trial court found that the mother's unstable income "potentially puts this housing at risk." The judge found that the mother "has also shown a general disinterest in

parenting [Josette]. She has missed parenting time opportunities and ha[d] failed to involve herself at all in [Josette's] education, therapeutic treatment, or medical care, and she ha[d] missed important extracurricular events in [Josette's] life." In addition, the judge found that Josette "is a child with diagnosed mental health concerns and a need for stability and predictability. She needs caregivers who can appropriately respond to her [post-traumatic stress disorder] triggers. Despite being given various opportunities to do so, [the mother] has not demonstrated that she is able to meet [Josette's] needs."

Based on the mother's demonstrated inability to meet Josette's needs, the judge found, by clear and convincing evidence, that the mother was presently unfit and that it would be in the child's best interest to continue living with the maternal grandmother. The mother appealed.

Discussion. "[P]arents have a fundamental liberty interest in the care, custody, and management of their children." Matter of Hilary, 450 Mass. 491, 496 (2008). However, a judge may appoint a guardian for a minor if, among other reasons, the judge "finds the parent[s] . . . to be unavailable or unfit to have custody." G. L. c. 190B, § 5-204 (a). See Guardianship of Estelle, 70 Mass. App. Ct. 575, 578 (2007) (custody of child belongs to parent unless parent is unfit). If a judge "finds

5

that a qualified person seeks appointment, . . . the conditions of [G. L. c. 190B, § 5-204 (a)] have been met, and the welfare and best interest of the minor will be served by the requested appointment, [the judge] shall make the appointment."  G. L. c. 190B, § 5-206 (c).  "Although the appointment of a guardian displaces the parent's rights and responsibilities for the duration of the guardianship (except as provided in the decree or otherwise by law), it does not terminate them."  Guardianship of Kelvin, 94 Mass. App. Ct. 448, 453 (2018).  Accordingly, "a parent retains the right to later petition for modification or termination of a guardianship involving their child."  Id.

The mother argues here that the evidence was insufficient to support the judge's finding of unfitness and that the judge therefore erred in granting the decree and order of guardianship.  While the mother recognizes that she has had shortcomings in her parenting of the child, she contends that the judge failed to account for her efforts to improve her parenting abilities.  Contrary to the mother's assertions, the judge considered the mother's efforts, but determined that, at the time of trial, the mother had not progressed to the degree that she was capable of meeting Josette's current needs.  The judge properly considered Josette's significant mental and physical health needs, the mother's inability to provide the level of care the child requires, and the mother's role in

6

aggravating Josette's anxiety and post-traumatic stress. See Adoption of Rhona, 63 Mass. App. Ct. 117, 129 (2005). The mother has done so by discounting Josette's stress reactions, continuing to maintain volatile relationships with male partners, and interfering with Josette's therapy by telling her to conceal information from her therapist. The record supports the judge's finding that, in light of Josette's mental and physical health status, the mother was not currently capable of meeting the child's needs. Id.

The judge also properly considered the strong bond that has developed between Josette and the maternal grandmother and Josette's therapist's testimony that changes to Josette's home life would have "some pretty devastating effects." Guardianship of Estelle, 70 Mass. App. Ct. 575, 581-582 (2007). While the bond between the child and the caretaker is not dispositive in guardianship cases, we do consider it as "a factor that has weight in the ultimate balance." Adoption of Nicole, 40 Mass. App. Ct. 259, 263 (1996). Because Josette has lived with the maternal grandmother since 2019 and has expressed anxiety and worry about possibly being told that she has to move away, the record amply supports the judge's determination that it would be

in Josette's best interest to remain in the maternal grandmother's custody.

<u>Decree affirmed</u>.

By the Court (Rubin, Englander & D'Angelo, JJ.[3]),

*Anne M. Thomas*
Assistant Clerk

Entered:  April 4, 2024.

---

[3] The panelists are listed in order of seniority.