NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1486

GUARDIANSHIP OF SALIM.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The paternal grandparents of Salim appeal from a decree of the Probate and Family Court, dismissing their petition for guardianship of Salim and awarding sole legal and physical custody of him to his mother. Discerning no abuse of discretion or other error of law in the court's determination that the mother was fit to parent Salim, we affirm.[2]

Background. We set forth the relevant facts and procedural background drawn from the judge's findings and decree, reserving certain facts for later discussion. See Guardianship of Kelvin, 94 Mass. App. Ct. 448, 449 (2018). Salim was born in May 2014 to the mother and the father, who both have a history of

_____

[1] A pseudonym.

[2] The grandparents have waived their appeal from the judgment entered on their petition for grandparents' visitation.

substance use disorder.  At that time, the family lived together in a property owned by the grandparents.  Shortly after Salim's birth, the father relapsed.  On one occasion, the father strangled the mother.  The father later moved out of the home. In January 2016, the mother was arrested on drug-related charges in the presence of Salim.  During the mother's detention following arrest, the grandparents took care of Salim.  In February 2016, the grandparents petitioned for guardianship of Salim, alleging that the mother "suffers from substance abuse" and the father "has alleged criminal matters open."  The court appointed the grandparents temporary guardians of Salim the same day.  Under the temporary guardianship, the mother had supervised parenting time with Salim.

Later in 2016, the mother moved into a house owned by her boyfriend, and the two became engaged.  In December 2016, after testing negative for drugs, the mother was allowed some unsupervised parenting time with Salim.  In the spring of 2017, the mother was permitted to be involved with Salim's medical care, academics, and extracurricular activities.  By the fall of 2017, the mother began to have overnight parenting time with Salim.  She and her fiancé had a child together, a son, in November 2017.

In August 2018, the grandparents petitioned for grandparents' visitation, alleging that they had a significant

relationship with Salim, and that allowance of the petition was in Salim's best interest. The temporary guardianship was repeatedly renewed and remained in effect from 2016 until the time of trial in 2023. After a four-day trial, the court dismissed the petition for guardianship and entered a four-page judgment providing the grandparents with significant visitation.[3]

Discussion. A court may appoint a guardian for a minor if, among other reasons, "the court finds the parents, jointly, or the surviving parent, to be unavailable or unfit to have custody." G. L. c. 190B, § 5-204 (a) (v). "Parental unfitness must be determined by taking into consideration a parent's character, temperament, conduct, and capacity to provide for the child in the same context with the child's particular needs, affections, and age." Adoption of Mary, 414 Mass. 705, 711 (1993). Unfitness contemplates "grievous shortcomings" that would put the child's welfare "much at hazard." Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption, 367 Mass. 631, 646 (1975). The party seeking guardianship, the grandparents here, "had the burden of proving by clear and convincing evidence that the mother was unfit." Guardianship of Raya, 103 Mass. App. Ct. 531, 534 (2023).

_____

[3] Although the father was represented by counsel at trial, he did not appear personally. He supported the grandparents having continued guardianship and was not himself seeking custody of Salim. He is not a party to this appeal.

3

Here, the judge found that the mother had not taken opioids, other than Suboxone (prescribed to treat opioid dependence) since 2011 and that she had stopped taking even Suboxone after her arrest in 2016. She had only one prescribed medication, and that one was not a narcotic. She had regular healthcare visits. The mother had been working as a delivery driver for the same employer for the past five years. She earned certifications and was promoted. She worked full-time and provided health insurance for her family. She had a stable home and a stable relationship with her fiancé since 2016. She was involved in and attentive to Salim's medical care and educational needs. She also took good care of her younger son, who had special needs. She nurtured an appropriate sibling relationship between Salim and her younger son. She also recognized Salim's bond with the grandparents and was supportive of their continuing, significant involvement with him. The judge ultimately found that the mother was currently fit to parent Salim.

Passing over the fitness determination, the grandparents argue that the judge failed to sufficiently address whether Salim's best interests would be served by dismissal of the guardianship petition.[4] However, "[c]ustody of a child belongs

_____

[4] Relying on cases discussing petitions to terminate guardianships, the grandparents suggest that the mother should

4

to a parent unless that parent is unfit."  Guardianship of

Estelle, 70 Mass. App. Ct. 575, 578 (2007).  The grandparents

acknowledge that "the evidence and findings may have adequately

established, as a matter of law, that the mother was 'fit,'" but

argue instead that the evidence and findings "did not establish

that the removal of the grandparents as guardians was in the

child's best interests."  Once a parent has been determined to

be fit to parent her child, however, there is no question of

guardianship to secure the child's best interests.  See id. at

576, 581 (guardianship not available if parent found to be fit).

Rather, the fitness determination itself encompasses the concept

of best interests.  See R.D. v. A.H., 454 Mass. 706, 715 (2009)

(critical question in fitness determination is whether parent is

currently fit to further welfare and best interests of child).

---

bear the burden to show that dismissal of the guardianship
petition would be in Salim's best interests.  In those
proceedings, the parent has the initial burden of production,
showing changed circumstances, but the burden of persuasion,
showing the parent to be unfit, remains with the guardian.  See
Guardianship of Kelvin, 94 Mass. App. Ct. at 455-456 (clarifying
burdens in guardianship removal proceedings).

    In any event, the petition before the court in this case
was not the mother's petition to terminate the grandparents'
temporary guardianship, but rather, it was the grandparents'
petition to be appointed guardians; as petitioners, the burden
was squarely on the grandparents to prove the mother's unfitness
by clear and convincing evidence.  See R.D. v. A.H., 454 Mass.
706, 711-712 (2009) (long-term temporary guardian seeking
permanent guardianship had burden to show legal parent's
unfitness).

The grandparents criticize some of the judge's findings, but ultimately, these criticisms amount to a disagreement with the judge's resolution of weight and credibility.  See Custody of Eleanor, 414 Mass. 795, 799 (1993) (on appellate review, judge's assessment of weight of evidence and credibility of witnesses is entitled to deference).  For example, they argue that the judge praised the mother for her care of her younger son with special needs but that this did not show that she was fit to raise Salim.  Yet, a parent's "demonstrated willingness and ability to care for another child in her custody is relevant to her general fitness as a parent."  Guardianship of Kelvin, 94 Mass. App. Ct. at 457.

Relying on concerns expressed by Salim's therapist and the guardian ad litem years before trial, the grandparents contend that the judge failed to explain how the mother, with her tendency towards anxiety and panic, can manage Salim, who has special personal, medical, and educational needs.  But the judge relied on other witnesses, in particular, an expert who performed court-ordered psychological testing on the mother, and concluded that the mother "does appear equipped to manage most aspects of parenting" and that "there is nothing in the test results that would suggest [the] [m]other cannot function successfully as a parent."  Additionally, the judge relied on more current information regarding the mother's functioning and

6

relationship with Salim, which trended in a positive direction. See Adoption of Carla, 416 Mass. 510, 517 (1993) (finding of unfitness cannot be based on stale information).

Contrary to the grandparents' claim that the judge ignored the mother's criminal and drug use history, the judge explicitly noted it as history; there was nothing in the evidence to suggest that it was a current concern. Likewise, the grandparents fault the judge for making no specific findings concerning the impact that a change in custody would have on Salim's academics; however, they point to no proffered evidence even suggesting that there would be any negative academic impact from Salim's move.

Finally, the grandparents emphasize their extended care of Salim and Salim's wellbeing under their influence, complaining that the judge failed to consider the impact of the dismissal of the guardianship petition on Salim. The judge's findings reflect due regard for the grandparents' exceptional caregiving. However, "we do not transfer a child from his or her parent to other custodians merely because the latter may provide a more advantageous environment for the child's upbringing." Guardianship of Estelle, 70 Mass. App. Ct. at 580. The judge here did consider and did find that dismissal of the guardianship petition would not harm Salim, particularly in the context of the generous grandparents' visitation awarded. Cf.

7

<u>Blixt</u> v. <u>Blixt</u>, 437 Mass. 649, 658 (2002) (in order to obtain visitation, grandparents must show that failure to award visitation will cause child significant harm).

<u>Decree affirmed</u>.

By the Court (Vuono, Singh & Hershfang, JJ.[5]),

Clerk

Entered:  April 9, 2025.

---

[5] The panelists are listed in order of seniority.